IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

OTT V. LAMMERS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STACY A. OTT, APPELLEE,

V.

JESS T. LAMMERS, APPELLANT.

Filed August 1, 2023.    No. A-22-755.

Appeal from the District Court for Phelps County: JOHN H. MARSH, Judge. Affirmed.

Jess T. Lammers, pro se.

Kari R. Fisk, Acting Phelps County Attorney, for appellee State of Nebraska.

RIEDMANN, BISHOP, and ARTERBURN, Judges.

PER CURIAM.

### INTRODUCTION

Jess T. Lammers appeals after the district court for Phelps County entered an order finding him to be in contempt for failure to pay child support. In his appeal, Lammers purports to challenge the underlying child support orders he was found to have not complied with, rather than the actual contempt order he appeals from. Because Lammers is precluded from challenging the prior child support orders, we affirm the district court's order.

### BACKGROUND

In 2004, a South Dakota trial court entered an order requiring Lammers to pay Stacy A. Ott, the mother of his two minor children, $150 per month in child support. Subsequently, in April 2005, an order was entered by the South Dakota court modifying Lammers' child support obligation such that he was now required to pay $225 per month in child support. As a part of the modification proceedings, Lammers had requested a reduction in his child support obligation as a

- 1 -

result of the children receiving monthly "social security disability payments because of a social security disability decision in favor of . . . Lammers." The court declined to reduce Lammers' child support obligation in this regard after finding that he was capable of full-time employment.

In October 2005, after a hearing, the district court for Phelps County, Nebraska, entered an order confirming the registration of the April 2005 South Dakota child support order. Therein, the court found: "That . . . Lammers has failed to provide sufficient evidence to vacate the registration, to establish a defense to the validity or enforcement of the registered order and therefore the registration has been confirmed." At the time this order was entered, Lammers continued to owe $225 per month in child support. In addition, he owed $3,829.48 in arrearages.

In 2013, Lammers' child support obligation was modified for a second time. Beginning January 1, 2013, Lammers was required to pay $252 per month in child support for the benefit of his two minor children.

In October 2019, the Phelps County Attorney filed an affidavit and application for order to show cause, which alleged that Lammers was in contempt of the court's previous order that he pay $252 per month in child support. The affidavit and application alleged that Lammers owed at least $1,553.92 in arrearages as of October 24. The district court entered an order to show cause directing Lammers

> to appear before the [court] to show cause why he should not be held in contempt by the court for failing to pay child support as previously ordered. The current, actual and present ability of . . . Lammers to pay the Court ordered support constitutes the critical question that will be reviewed by this Court at the show cause/contempt hearing.

After numerous continuances, the show cause hearing was held before the district court on September 22, 2022.

At the show cause hearing, the State presented evidence that Lammers owed $4,647.92 in child support arrearages as of June 1, 2022. The court found that such evidence provided a rebuttable presumption that Lammers was in contempt of the prior child support orders. Lammers testified in order to rebut that presumption. Lammers indicated during his testimony his belief that he was not in contempt of the child support orders because he was not provided an "offset credit of Social Security payments provided directly to [Ott] by . . . treasury warrant, those payments total $38,287.73, approximately." Lammers testified that he has more than paid his child support in full. Upon the State's objection, the district court found Lammers' testimony regarding the social security disability payments to be irrelevant, as the issue had been raised and finally determined by the South Dakota trial court in 2005.

Lammers went on to testify that he is still suffering from pain and range of motion issues as a result of the 2000 accident which resulted in him receiving the social security disability payments. In the years after his accident, Lammers worked for various construction companies, but testified that often such employment ended quickly because he could not physically complete all of the jobs' requirements. In 2005, Lammers began work answering phones in a call center. He went on to work as a bartender, at a gas station, and in a warehouse. Lammers indicated he struggled physically in each of these jobs.

In 2012, Lammers completed vocational rehabilitation when he obtained a bachelor's degree. His degree prepared him for employment in the areas of ecology, forestry, wildlife biology,

conservation, and research. Lammers then obtained employment at various times with the U.S. Department of Agriculture; as a manager at a pork farm; as a chemical applicator for multiple lawn care businesses and for Lincoln County; as a home inspector; and as a service writer for an automotive company. The average wage Lammers earned for these jobs was $20 an hour.

Most recently to the show cause hearing, Lammers was employed by a company called Ag Valley as a chemical applicator beginning in January 2020. He earned $21 per hour plus bonuses. However, in April 2020, he was arrested while at work and charged with a felony. As a result, his employment was terminated. He received 69 weeks of unemployment benefits after this termination.

Lammers has remained unemployed since April 2020, indicating that he has "been engrained in a battle with the State of Nebraska," regarding his criminal charges. Additionally, Lammers was hospitalized at the Lincoln Regional Center for 52 days during March and April 2022 to determine his competency to stand trial. Lammers did testify that he has continued to seek out gainful employment. He explicitly indicated that he has not willfully failed to pay his child support by not seeking employment. He testified that he is currently homeless and unable to support himself.

At the close of the evidence, the district court orally ruled from the bench: "Well, the Court finds that [the State has] establishe[d] a rebuttable presumption of willful contempt. Mr. Lammers has failed to rebut that presumption. There were periods of time there has been no payment at all despite some employment [and] ability to pay." The court then entered an order on September 26, 2022, finding that Lammers was in willful contempt of court for failure to pay child support as ordered. The court found that Lammers owed $4,647.92 in past due child support. The court then found that a plan to purge the contempt was appropriate, as Lammers "has the present ability to comply with the requirements of [the purge] plan through exercising reasonable efforts including [his] ability to obtain and maintain gainful employment, his history of gainful employment, use of other available resources, and his ability to control any behaviors which may interfere with employment."

The specifics of the purge plan imposed by the district court required that, beginning on January 1, 2023, three months after the contempt order issued, Lammers shall make payments of no less than $100 per month toward his child support arrearages. Then, beginning in 2024, Lammers shall pay no less than $200 per month until he has paid his past due child support in full, or made all required payments through September 2025. However,

> [i]f [Lammers] fails to make payments as required by this purge plan he shall report to the Phelps County Jail beginning on January 1, 2023 and remain in jail until he has purged his contempt by payment in full of any remaining past due child support, or until he has served fifteen (15) days in jail exclusively on this contempt sanction whichever occurs sooner.

After the entry of the district court's order, Lammers timely filed this appeal.

ASSIGNMENTS OF ERROR

In his brief on appeal, Lammers assigns 20 errors. Each of these errors challenges the prior orders of various courts which imposed, modified, and enforced his child support obligation. Many

of his assigned errors concern whether Lammers should have received a credit for the social security disability payments made on his behalf to his minor children.

STANDARD OF REVIEW

In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and of the sanction to be imposed are reviewed for abuse of discretion. *Vyhlidal v. Vyhlidal*, 309 Neb. 376, 960 N.W.2d 309 (2021).

ANALYSIS

Although Lammers has appealed from the district court's order finding him in contempt for failure to pay child support as ordered, his assertions on appeal do not challenge the contempt order in any way. Rather, Lammers' numerous assignments of error on appeal challenge the prior child support orders. Specifically, Lammers believes that the prior child support orders were flawed in that he was not provided any credit for social security disability payments received by his minor children as a result of an injury he sustained. As such, Lammers believes that he has more than paid his child support in full.

As the district court found, however, the issue of Lammers' entitlement to a credit for the social security disability payments was raised before the trial court in South Dakota as part of the 2005 modification proceeding. The South Dakota court resolved the issue and found that Lammers was not entitled to such a credit. We agree with the district court that

> [t]here is no dispute of the South Dakota Circuit Court's subject matter jurisdiction. The parties to this action are the same; this matter involves a registration of a support order from that case. The Court finds that the issue of credit for Social Security disability was raised and determined in a final judgment by the South Dakota Court.

Essentially, through this appeal, Lammers is attempting to collaterally attack a prior, final judgment.

When a judgment is attacked in a way other than by a proceeding in the original action to have it vacated, reversed, or modified, or by a proceeding in equity to prevent its enforcement, the attack is a collateral attack. *Fetherkile v. Fetherkile*, 299 Neb. 76, 907 N.W.2d 275 (2018). Even if erroneous, a judgment is not subject to collateral attack unless it is void, such as would be the case where a judgment is entered without jurisdiction over the person or subject matter. *Id*. A judgment entered by a court which lacks subject matter jurisdiction is void and may be attacked at any time in any proceeding. *Davis v. Moats*, 308 Neb. 757, 956 N.W.2d 682 (2021). And refusal to obey a void order or judgment is not contempt. *Id*. Here, Lammers does not assert that the prior child support orders are void, only that they contain an error in their handling of the social security disability payments.

Lammers is appealing from an order of contempt in which the only issues are whether the court erred in finding that he willfully violated the child support order and in imposing its sanction and purge order. Because Lammers does not assign and argue any error relating to these issues,

we affirm the order of the district court. We agree with the district court that the validity of the support order cannot be collaterally attacked in this proceeding; therefore, we need not address Lammers' assigned errors which, as stated above, relate solely to this issue.

CONCLUSION

We find that Lammers' assigned errors constitute an improper collateral attack on prior child support orders. Because he assigns no error related to the contempt order, we affirm.

AFFIRMED.

ARTERBURN, Judge, dissenting.

While I agree with the majority that the assignments of error contained within Lammers' brief constitute an improper collateral attack on prior child support orders, I disagree that we should have evaluated Lammers' appeal at all. Instead, I believe that we should have dismissed the appeal as moot.

After both Lammers and the State filed their briefs with this court, the State filed a suggestion of mootness and a motion for summary dismissal, asking that we dismiss Lammers' appeal as moot. In its filings, the State indicated that contrary to the purge plan ordered by the district court, Lammers failed to make his first payment on or before January 1, 2023. As a result, according to the State, Lammers was placed in the Phelps County jail on January 21, 2023. Lammers served the 15-day sentence imposed by the district court and was released from jail on February 4. The State did attach the warrant and commitment dated January 19 to its suggestion of mootness. It also attached the service return which indicated that Lammers had been served with the warrant on January 21, 2023. Lammers did not file any objection to the State's suggestion of mootness. As such, he did not challenge the State's information that he had served the 15-day sentence imposed by the district court.

Given that Lammers has completed serving the suspended jail sentence imposed by the court for his contempt conviction, his appeal from that same sentence is now moot. Lammers appealed from the district court's order finding him in contempt and instituting a purge plan. As part of that purge plan, Lammers was to serve a maximum of 15 days in jail if he failed to make payments toward his child support arrearages. Upon serving 15 days in jail, Lammers would be deemed to have purged his contempt pursuant to the terms of the order. The State has provided this court with evidence that Lammers has served the maximum 15-day jail sentence in relation to his contempt conviction. As such, given the terms of the district court's order, he has purged his contempt. The Nebraska Supreme Court has regularly held that when an action an appellant seeks to prevent is completed while an appeal is pending, that completion renders the appeal moot. See *Nesbitt v. Frakes*, 300 Neb. 1, 911 N.W.2d 598 (2018).

As a general rule, a moot case is subject to dismissal. See *id*. Because Lammers has appealed from the district court's order finding him in contempt for failure to pay child support and has now purged himself of that contempt, his personal interest in the resolution of the dispute that existed at the beginning of the litigation has been eradicated. Moreover, the facts of this case do not warrant the application of the public interest exception to the mootness doctrine. See *Yancer v. Kaufman*, 22 Neb. App. 320, 854 N.W.2d 640 (2014) (it has been recognized that under certain circumstances, appellate court may entertain issues presented by moot case when claims presented

involve matter of great public interest or when other rights or liabilities may be affected by case's determination). As such, I believe we should have granted the State's motion for summary dismissal and dismissed the appeal as moot. For this reason, I dissent from the majority's opinion.